1  iCommLaw
   ANITA TAFF-RICE, SBN 186039
2  1547 Palos Verdes #298
   Walnut Creek, CA 94597
3  Telephone:  (415) 699-7885
   Facsimile:  (925) 274-0988
4  Email: anita@icommlaw.com
   *Attorneys for Plaintiff Jonathan Finestone*
5

6

7                    **UNITED STATES DISTRICT COURT**

8              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9                        (Sacramento Division)

10 JONATHAN FINESTONE

11 *Plaintiffs,*                          **CASE NO.**

12        v.
                                          **COMPLAINT**
13 UTILITY TELECOM GROUP, LLC,
   UTILITY TELEPHONE, INC., JASON
14 MILLS, AND  DOES 1-10,

15 *Defendants.*

16

17

18        Jonathan Finestone ("Finestone"or "Plaintiff") by and through his attorneys, brings this

19 Complaint against Utility Telecom Group, LLC ("UTG"), Utility Telephone, Inc.  ("UTI"),

20 Jason Mills, (collectively "UTG Affiliates" or "UTG Defendants") and unknown individual,

21 corporate or affiliated entities Does 1-10, and alleges, on knowledge as to its own actions, and

22 otherwise upon information and belief, as follows:

23                    **I.      NATURE OF THE ACTION**

24 1.      This Complaint arises from the failure of one or more of the UTG Defendants to

25      transfer certain telephone numbers assigned to Finestone to another carrier of Finestone's

26

27                                                        COMPLAINT
                                  1
28

1    choosing as required by federal and state law.

2    2.        In order to promote competition in the telecommunications industry, the federal

3    government enacted legislation in 1996 mandating that telecommunications carriers must

4    allow subscribers to freely transfer their telephone numbers to another carrier.  This process

5    is referred to as a "port."  The legislation requires that ports occur expeditiously; within 24

6    hours for simple ports, up to a few days for large volumes of numbers to be transferred or

7    for complex ports.

8    3.        Finestone has followed the proper process to request the port of his assigned telephone

9    numbers but UTG Defendants have refused multiple times for more than a year to port

10   Finestone's telephone numbers to the new carrier designated by Finestone.

11   4.         Finestone is being harmed by UTG Defendant's willful refusal to port his numbers and

12   accordingly he brings this action seeking a judgment requiring UTG Defendants to port the

13   numbers and to recover damages for the harm UTG Defendants have caused.  Finestone

14   has lost current and future revenue and business opportunities from telecommunications

15   clients due to the loss of known telephone numbers for Finestone.

16                    **II.        THE PARTIES, JURISDICTION AND VENUE**

17   5.        Jonathan Finestone is a resident of West Hollywood, California.

18   6.        Finestone is informed and believes, and on that basis alleges, that Utility Telecom

19   Group, LLC ("UTG") is a Delaware limited liability corporation owned by Jason Mills and

20   has a principle place of business located at  4202 Coronado Avenue, in Stockton,

21   California.  Finestone further is informed and believes that UTG is an affiliate of Utility

22   Telephone, Inc.

23   7.        Finestone is informed and believes, and on that basis alleges, that Utility Telephone,

24   Inc. ("UTI") is a California corporation owned by Jason Mills, and is certified by the

25   California Public Utilities Commission ("CPUC") to operate in California as a competitive

26

27                                                                                    COMPLAINT
                                                    2
28

local exchange carrier ("CLEC") with Utility Number U-5807-C.  Finestone further is informed and believes, and on that basis alleges, that UTI is an affiliate of UTG and has its principal place of business located at 4202 Coronado Avenue in Stockton, California.

8.     Finestone is informed and believes, and on that basis alleges, that Jason Mills is a resident of Stockton, California and is an owner of both UTG and UTI.  Finestone is informed and believes, and on that basis alleges, that the UTG Defendants have one or more investors other than Mr. Mills who may have a controlling interest or other rights to control the policies or operations of the UTG Defendants.

9.     The true names and capacities, whether individual, corporate, affiliate, associate, or otherwise of the Defendant named herein as DOES 1-10, inclusive, are unknown to Finestone, who therefore brings this Complaint against them under fictitious names. When the true names and capacities of those Defendants are ascertained, Finestone will amend this Complaint to insert the true names and capacities of those Defendants.

### III.     JURISDICTION AND VENUE

10.     This case arises under federal statutory and state common law and relates to rights and obligations created pursuant to federal statute, specifically the Telecommunications Act of 1996, ("FTA") Pub. Law No. 104-104, 110 Stat. 56 (1996), 47 U.S.C. §151 *et. seq.* Therefore this Court has original jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331.

11.     More specifically, this court has jurisdiction over this matter pursuant to 47 U.S.C. §§ 206 and 207.

12.     47 U.S.C. §206 of the Telecommunications Act of 1996 mandates:
"In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to

COMPLAINT

> be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

13. 47 U.S.C. §207 provides,

> Any person claiming to be damaged by any common carrier subject to the provisions of this Act may either make complaint to the [Federal Communications] Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this Act, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

14.    The right of action conferred under §§ 206 and 207 applies not only to the Telecommunications Act, but to FCC implementing regulations as well.  *Precision Pay Phones v. Qwest Communs. Corp.* (N.D.Cal. 2002) 210 F.Supp.2d 1106, 1115.

15.    47 U.S.C. § 502 provides for penalties for willful or knowing violations of any rule, regulation, restriction, or condition made or imposed by the FCC under authority of the Communications by a fine of not more than $ 500 for each and every day during which such offense occurs.

16.    This Court also has pendant jurisdiction over state law claims under 28 U.S.C. § 1367.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Defendant transacts business here.

### IV.    LEGAL FRAMEWORK FOR NUMBER PORTING

18.    Under the FTA and regulations issued by the Federal Communications Commission ("FCC") pursuant to the FTA, "users of telecommunications services" have a right "to retain, at the same location, existing telecommunications numbers without impairment of quality, reliability, or convenience when switching from one telecommunications carrier to another.  47 U.S.C. 153(37); *see also* 47 C.F.R. §§ 52.20, *et seq.*  This practice is known as "number portability", or "porting."  47 U.S.C. 153(37); 47 C.F.R. §52.21(m).

COMPLAINT

1   19.     Number portability was intended to benefit consumers and competition. *In re*

2           *Telephone Number Requirements for IP-Enabled Service Providers*, 22 FCC Rcd

3           19531,19540 (F.C.C. October 31, 2007) .

4   20.     Congress made clear that users' number portability rights should be completely

5           unfettered by mandating that users of telecommunications services have a right to port their

6           numbers even if they owe an unpaid balance to the existing carrier. Id., at 19555, at ¶43.

7   21.     Neither the Code of Federal Regulations nor the FTA define the term "user of

8           telecommunications services", but the FCC has defined the term "end user" to mean the

9           recipient of a "telecommunications service" from a CLEC such as UTI.  *N. Valley*

10          *Communs., LLC v. FCC* (2013) 717 F.3d 1017, 1019.

11  22.     Finestone was the recipient of telecommunications services from Defendants, including

12          inbound and outbound local and long distance services in addition to assigning and

13          maintaining telephone numbers to Finestone.

14  23.     Finestone contracted and paid for telecommunications services received through an

15          agency arrangement in which Finestone referred business prospects to Defendants in

16          exchange for use of Defendants' telecommunications services, network facilities, and

17          management of Finestone's  telephone numbers.

18  24.     The FCC's number porting rules apply both to traditional ten-digit telephone numbers

19          with a three-digit area code followed by seven digits and toll free numbers that begin with

20          an "8" followed by duplicate digits (*e.g.* 800, 866, 877, or 888).  47 U.S.C. 153(37).

21  25.     All telecommunications carriers are to carry out "simple" port requests within one

22          business day. 47 C.F.R. §52.35(a).  All requests for "non-simple" ports must be carried out

23          in four business days. 47 C.F.R. §52.35(d).

24  26.     Simple ports generally are defined as ports involving one telephone number.  Included

25          among the category of non-simple ports are those that involve porting multiple numbers. *In*

26

27                                                                                      COMPLAINT

                                              5

28

*re Tel. No. Portability*, 18 FCC Rcd or d 23697, 23715 (F.C.C. November 7, 2003).   Under this definition, Finestone's port would be considered complex, thus it should have been completed within four business days from the port request.

27.     To port a telephone number to a new telecommunications carrier, the user contacts the prospective new carrier, which initiates the porting process.

28.     The user initiates the porting process by entering a specified set of information in data fields on a computer ordering system for the new carrier.  47 C.F.R. § 52.36(a).  This information enables the new carrier to confirm the user's identity, match it to a valid account, and then makes an electronic porting with the existing carrier. Once a valid porting request has been made, the existing carrier cannot legally refuse to port numbers.

29.     All telephone numbers in the United States are managed by a local number portability administrator, which is an independent, non-governmental entity, not aligned with any particular telecommunications industry segment. 47 C.F.R. §52.21(j).  A telecommunications carrier may request blocks of local numbers from the administrator for the purpose of assigning those numbers to users. Telecommunications carriers must apply to the number administrator for blocks of local telephone numbers which they then use  to provide service to their own customers or they assign telephone numbers to other providers so that they can use the numbers to provide service.

30.     Toll free numbers are administered differently.  All toll-free numbers are contained in a centralized database called the 800 Service Management System ("800 SMS"). The 800 SMS indicates whether a toll number (1-8xx) is available or in use.  If the toll free number is in use, the 800 SMS provides routing instructions so a translation can be performed to route the 1-8xx call to the traditional ten-digit phone number used by the recipient hosting the toll free number.

31.     To get an assignment of toll free numbers, telecommunications carriers must apply to a

COMPLAINT

1    Responsible Organization ("RespOrg"), which is a businesses, often telephone companies,

2    that have gone through a certification process and have 800 SMS privileges. A RespOrg can

3    check availability, reserve numbers for customers, and make changes to the customer's

4    account.

5    **V. ASSIGNMENT OF NUMBERS AND DEFENDANTS' FAILURE TO PORT**

6    32.    Finestone believes, and on that basis, alleges as follows: The Telephone Connection of

7    Los Angeles, Inc. ("TTC") and/or Telephone Connection Local Services, LLC ("TCLS") or

8    an affiliated entity obtained local numbers from the numbering administrator and toll free

9    numbers from one or more RespOrgs.  Finestone believes, and on that basis alleges that

10   TTC and TCLS were owned, directly or indirectly, by Marc O'Krent.

11   33.    Mr. O'Krent assigned approximately 1200 telephone numbers to Finestone for his use.

12   These numbers included both local ten-digit numbers and toll free numbers.

13   34.    Certain of the local numbers assigned to Finestone are considered to be premium

14   numbers because they have repeating digits, such as 1-213-777-7777 and are therefore easy

15   to remember and are viewed as a valuable marketing tool by end users such as Finestone.

16   35.    Certain of the toll free numbers, sometimes referred to as "vanity numbers" were

17   especially valuable because they spell a word when the corresponding letter on a telephone

18   keypad was substituted for the number.  One example is 1-800-638-9675, which spells 1-

19   800-NETWORK. The telephone numbers were provided by TTC to Finestone at an

20   effective $0.00 billing rate as consideration for Finestone charging reduced commissions for

21   business referrals to TTC ("TTC Agreement").

22   36.    Finestone is informed and believes, and on that basis alleges that in October 2015,

23   Defendant Utility Telephone, Inc. acquired the assets of TTC and TCLS and affiliates

24   (including customer accounts) from Mr. O'Krent.  This transaction included the assignment

25   of Finestone's account and telephone numbers to one or more of the UTG Defendants.  A

26

27

28

1    true and correct copy of two emails from Mr. O'Krent to Finestone regarding the transfer of

2    telephone service and the Finestone numbers to Defendants is provided as **Exhibit B**.

3    37.    UTG Defendants continued the TTC Agreement under which Finestone acted as an

4    agent to identify and refer business opportunities to one or more of the UTG Defendants in

5    exchange for an effective billing rate of $0.00 for use of the telephone numbers and

6    telecommunications services provided by Defendants.  One or more of the UTG Defendants

7    and/or Does thereby entered into either an oral express or implied contract to provide

8    telecommunications services and to manage the Finestone telephone numbers.  Cal. Civ.

9    Code §1620 (express contract); Cal. Civ. Code  §1621 (implied contract).

10   38.    Upon the transfer of Finestone's telecommunications services and numbers, the UTG

11   Defendants became the entity or entities responsible for maintaining the Finestone

12   telephone numbers.  In particular, one or more of the UTG Defendants served as the

13   RespOrg for maintaining the toll free numbers assigned to Finestone.  Over time, additional

14   telephone numbers were assigned to Finestone by one or more of the UTG Defendants.

15   39.    Among the telecommunications services provided by Defendants to Finestone are

16   inbound and outbound local and long distance services.

17   40.    Finestone contracted and compensated Defendants for telecommunications services

18   received through an  agency arrangement in which Finestone referred business prospects to

19   Defendants and provided ongoing management and customer service for customer accounts

20   referred prior to Defendants' acquisition of TTC and TCLS assets, in exchange for use of

21   Defendants' telecommunications services, network facilities and management of

22   Finestone's  telephone numbers.

23   41.    In February of 2018, Defendants sent or caused to be sent a proposed written contract

24   with terms substantially less favorable to Finestone than the TTC Agreement, including the

25   proposal to charge an effective billing rate above $0.00 for managing Finestone's telephone

26

27                                                                                COMPLAINT

8

28

numbers and for telecommunications services.  As part of this proposed revision to the TTC Agreement, one or more of the Defendants sent or caused to be sent a list of the telephone numbers assigned to Finestone's account and Private Branch Exchange (a telephone switching device used to receive incoming and send outgoing calls).  **Exhibit C** is a true and correct copy of the February 2018 email conveying a new written contract and the partial list of the Finestone telephone numbers being maintained by one or more of the Defendants.[1]  The list in **Exhibit C** was incomplete because it did not include all of the telephone numbers that had been assigned to Finestone.

42.     The complete list of telephone numbers assigned to Finestone as of the date of this Complaint is provided as **Exhibit A**.  Finestone confirmed with UTG the telephone numbers that were maintained by UTG on his behalf.  A true and correct copy of correspondence documenting telephone number assignments to Finestone's PBX is provided as **Exhibit D**.

43.     Throughout the period after the Defendants acquired TTC and TCLS through January, 2018, Defendants sent invoices to Finestone for telecommunications services showing usage of telecommunications services and the telephone numbers assigned to him but a $0.00 balance due.  **Exhibit E** is a true and correct copy of the January, 2018 invoice sent to Finestone's company, AIS and **Exhibit F** is a true and correct copy of an invoice sent directly to Finestone.

44.     At no time prior to March, 2018 did Defendants assert that Finestone's account had any unpaid invoices.

45.      On or about March 1, 2018, without any prior notice or agreement, UTI submitted an invoice to Finestone that reversed the prior $0.00 billing rate and instead sought to charge

---

[1] On information and belief, the abbreviations in the email refer to the following terms: 1) DID – direct inward dial (this is another term for local numbers); 2) TF – toll free.

for use of the Finestone telephone numbers. Attachment D is a true and correct copy of the March 1, 2018 invoice sent to Finestone.

46.      Confirming Finestone and Defendants' contractual arrangement under the TTC Agreement, the March 1, 2018 invoice did not reflect any prior amounts owed by Finestone

47.      The proposed contract in which Finestone would be charged a non-zero rate was not acceptable to Finestone and he began looking for a replacement CLEC to provide telecommunications services and manage his telephone numbers.

48.      On or about March 14, 2018, Finestone submitted a request to port the approximately 1200 telephone numbers on **Exhibit A** from Defendants to another telecommunications carrier.

49.      On or about March 21, 2018, UTG rejected the port request purportedly because the name on the port order and the name on the telephone account did not match.

50.      Although Finestone did not agree that was a mismatch of the name, he repeated his port request to Defendants with modifications he believed addressed Defendants' claims that the name in which the porting request was made needed to be changed.  Nonetheless, despite addressing each reason given by Defendants for rejecting Finestone's port request, each port request was rejected.

51.      On or about February 1, 2018, Finestone instructed a new telecommunications carrier to submit a port request to Defendants to port Finestone's numbers its network.  Defendants rejected the port request.

52.      Finestone is informed and believes, and on that basis alleges, at some time in 2018, the Defendants released the vanity number 1-800-NETWORK to another RespOrg.  Defendants did not provide notice to Finestone, nor obtain consent from him to release the number.

53.      Finestone is informed and believes, and on that basis alleges, that the new RespOrg. assigned 1-800-NETWORK to another user.

COMPLAINT

54.     Finestone is informed and believes, and on that basis alleges, that Defendants have released the premium number 1-213-777-7777 to another customer without providing notice or obtaining consent from him to release the number.  Finestone further is informed and believes, and on that basis alleges, that Defendants have released the premium number 1-213-888-8888 to another customer without providing notice or obtain consent from him to release the number.

55.     Previously, on December 20, 2016, Defendant Mr. Mills contacted Finestone via email inquiring whether it was acceptable to release the premium number 1-213-777-7777. Finestone did not agree to the release of this number.

56.     Finestone communicated multiple times with Defendants and Defendants' counsel through January 2019, in an effort to have all of the numbers that had been assigned to him ported to another carrier.  Finestone also requested, unsuccessfully to have Defendant reclaim the vanity number 1-800-NETWORK and premium numbers 213-777-7777 and 213-888-8888. The Defendants has declined all requests to port Finestone's numbers or to reclaim 1-800-NETWORK, 213-777-7777 or 213-888-8888.

57.     Abruptly, on February 1, 2019, Defendants, through their counsel, terminated discussions with Finestone.

58.     On or about March 26, 2019, after attempts to resolve the porting issue were unsuccessful, Finestone made a formal written demand that the approximately 1200 numbers on Exhibit A assigned to him be ported to another telecommunications carrier.

59.     Finestone therefore believes there is no recourse other than to bring this action to get Defendants to port the telephone numbers as required by federal law.

/ / /

/ / /

/ / /

COMPLAINT

## VI.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF 47 C.F. R. § 52.35 Porting Intervals

60.    Finestone restates and incorporates by reference each of the foregoing paragraphs as though set forth fully herein.

61.    Finestone is a user of telecommunications provided by one or more of the UTG Defendants.

62.    Finestone was assigned certain toll free and traditional telephone numbers by a predecessor in interest to the UTG Defendants and by UTG Defendants.

63.    Finestone filed a request with the UTG Defendants to port his telephone numbers to a new carrier on or about March 21, 2018.

64.    One or more of the UTG Defendants are required by federal law to port Finestone's telephone numbers within four business days.  47 C.F.R. §52.35(d). 47 U.S.C. 153(37).

65.    The Defendants have refused to port Finestone's telephone numbers as of the date of this Complaint.

66.    The UTG Defendants' refusal to port Finestone's telephone numbers is a violation of federal law.  47 C.F.R. §52.35(d). 47 U.S.C. 153(37)

67.    The UTG Defendants' refusal to port Finestone's telephone numbers has caused Finestone direct harm by making it impossible for Finestone to use the telephone numbers to conduct business.

68.    Because of the UTG Defendants' unlawful acts, and the harm caused thereby, Finestone is entitled to recover all available remedies under the law, including but not limited to actual damages, return of any telephone numbers that have been released to a third party, reasonable attorney fees, costs.

/ / /

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF 47 U.S.C. SECTION 201**

69.     Finestone restates and incorporates by reference each of the foregoing paragraphs as though set forth fully herein.

70.     47 U.S.C. Section 201 requires all practices in connection with a communications service to be just and reasonable.

71.     By refusing to port Finestone's numbers within the time frames required under federal law, one or more of the UTG Defendants have failed to act in a just and reasonable manner, in violation of Section 201.

72.     UTG Defendants' violation of Section 201 has caused Finestone damages, including but not limited to lost business due to his inability to use telephone numbers for business purposes.

73.     Because of the UTG Defendants' unlawful acts, and the harm caused thereby, Finestone is entitled to recover all available remedies under the law, including but not limited to actual damages, return of any telephone numbers that have been released to a third party, reasonable attorney fees, costs,

**THIRD CLAIM FOR RELIEF**

**VIOLATION OF CAL. BUS. & PROF. CODE**

74.     Finestone restates and incorporates by reference each of the foregoing paragraphs as though set forth fully herein.

75.     Section 17200 of the Cal. Bus. & Prof. Code, California's unfair competition law ("UCL") prohibits conduct that is an *inter alia* "unlawful, unfair or fraudulent business act."

76.     UTG Defendants knowingly refused to port Finestone's telephone numbers in violation of federal law and failed to correct the violation after Finestone notified them of the violation.

77.     Under the UCL, a violation of any other state or federal law constitutes a violation of California's UCL.  *See*, B*rokaw v. Qualcomm, Inc.* (S.D.Cal. Feb. 27, 2002, No. 01-CV-1172-L(LAB)) 2002 U.S.Dist.LEXIS 27809, at *25 ("The unlawful practices prohibited by Cal. Bus. & Prof. Code §§ 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made.")

78.     UTG Defendants' refusal to port Finestone's numbers violate 47 C.F.R. §§ 52.20, *et seq.*  Therefore the conduct constitutes an unlawful and unfair practice under California law.

### FOURTH CLAIM FOR RELIEF

### BREACH OF ORAL CONTRACT

79.     Finestone restates and incorporates by reference each of the foregoing paragraphs as though set forth fully herein.

80.     As alleged herein, Finestone and the one or more of the UTG Defendants entered into an oral contract whereby they agreed to provide and manage telephone numbers and to provide telecommunications services to Finestone for a $0 rate in exchange for business referrals from Finestone to one or more of the Defendants.

81.     Finestone has performed all or substantially all of the obligations he owed under the terms of the oral contract including, but not limited to, providing valuable business referrals to one or more of the Defendants.

82.     One or more of the Defendants have breached the contract by repeatedly failing to manage Finestone's telephone numbers, including refusing to port those numbers to another CLEC as required by federal law.

83.     As a result of the UTG Defendants' breach, Finestone has suffered damages in an amount to be proven at trial.

/ / /

/ / /

COMPLAINT

14

**FIFTH CLAIM FOR RELIEF**

**BREACH OF COVENANT OF GOOD FIATH AND FAIR DEALING**

84.     Finestone restates and incorporates by reference each of the foregoing paragraphs as though set forth fully herein.

85.     As alleged herein, Finestone and one or more of the UTG Defendants had a valid contract.  Finestone did all, or substantially all of the things the contracted required him to do.  All conditions required by the UTG Defendants' performance under the contract had been performed by Finestone, namely he provided good and valuable business referrals and customer account management to one or more of the UTG Defendants.

86.     The UTG Defendants unfairly interfered with Finestone's right to receive the benefits of his contract performance.  This includes the UTG Defendants' failure to manage Finestone's telephone numbers in a professional and legal manner by porting those telephone numbers to another CLEC upon request by Finestone.

87.     As a result of the Defendants' breach, Finestone has suffered damages in an amount to be proven at trial.

**VII.     PRAYER FOR RELIEF**

WHEREFORE, Finestone respectfully requests the following relief:

88.     That the Court require UTG Defendants immediately to recover any toll free or local numbers assigned to Finestone that have been released to another RespOrg or customer.;

89.     That the Court conclude that UTG Defendants have violated the telephone number porting requirements under federal law set forth at 47 C.F.R. §§ 52.20, *et seq.* by failing to port Finestone's numbers within the required intervals;

90.     That the Court conclude UTG Defendants violated Section 201 of the Act by failing to port Finestone's numbers;

91.     That the Court conclude Defendants violated Cal. Bus. & Prof. Code 17200;

92.     That the Court conclude UTG Defendants breached the oral contract with Finestone, and the covenant of good faith and fair dealing, by failing to manage Finestone's telephone numbers in a lawful manner by porting them to another CLEC upon Finestone's request;

93.     That the Court conclude that UTG Defendants breached an oral contract under which one or more UTG Defendants maintained local telephone numbers assigned to Finestone and acted as a RespOrg for toll free numbers assigned to Finestone;

94.     That the Court conclude that UTG Defendants breached the covenant of good faith and fair dealing;

95.     That the Court conclude that Finestone benefitted the public at large through this case by putting the UTG Defendants, and other CLECs that fail to timely port telephone numbers, on notice that they must live up to their porting obligations under federal law.  On that basis, Finestone is entitled to recover attorney's fees pursuant to Cal. Code of Civ. P. § 1021.5;

96.      That the Court award  Finestone revenues lost due to the loss of his telephone numbers and litigation costs and attorney's fees expended to seek relief from the UTG Defendants' violation of 47 C.F.R. §§ 52.20, *et seq.* and violation of 47 U.S.C Section 201; and

97.     That the Court award Finestone such other and further relief that the Court deems appropriate.

DATED:   January 30, 2020

                                                          /s/Anita Taff-Rice

                                                          iCommLaw
                                                          Anita Taff-Rice, Esq. (SBN 186039)
                                                          1547 Palos Verdes, # 298
                                                          Walnut Creek, CA  94597
                                                          Tel.: (415) 699-7885
                                                          Email: anita@icommlaw.com
                                                          *Attorneys for Plaintiff*
                                                          *Jonathan Finestone*

COMPLAINT

16